**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SANDRA STRASSNER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No.:** |
| **v.** | § | |
| | § | |
| **ROBERT L. WILKIE, in his official** | § | |
| **capacity as Secretary of Veterans** | § | **TRIAL BY JURY DEMANDED** |
| **Affairs, and FRANCISCO VAZQUEZ,** | § | |
| **in his official capacity as Director of the** | § | |
| **Michael E. DeBakey VA Medical Center,** | § | |
| | § | |
| **Defendants.** | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT AND
### REQUEST FOR INJUNCTIVE RELIEF

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

SANDRA STRASSNER, (hereinafter "Plaintiff"), complains of ROBERT L. WILKIE, in his official capacity as Secretary of Veterans Affairs, and FRANCISCO VAZQUEZ, in his official capacity as Director of the Michael E. DeBakey VA Medical Center (hereinafter "Defendants"), and for cause of action would show the Court as follows:

### INTRODUCTION

1.    Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2.    Plaintiff files this Complaint and complains about race discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

3.    Plaintiff files this Complaint and complains about discrimination based on age under the Age Discrimination in Employment Act (ADEA), as amended.

1

4. Plaintiff files this Complaint and complains about discrimination based on her disability under the Americans with Disabilities Act, as amended.

5. Plaintiff files this Complaint and complains about retaliation under Americans with Disabilities Act, as amended.

6. Plaintiff seeks to be made whole, including but not limited to compensatory damages, plus lost wages (past, present, and future), attorney's fees, taxable court costs, pre-judgment and post-judgment interest.

**PARTIES**

7. Plaintiff, Sandra Strassner, is a resident of Houston, Texas.

8. Defendant, Robert L. Wilkie, in his official capacity, may be served by mail or in person on William A. Hudson, Jr., Acting General Counsel and Principal Deputy General Counsel, 810 Vermont Ave., NW, Washington, D.C. 20420.

9. Defendant, Francisco Vazquez, in his official capacity, may be served by mail or in person on William A. Hudson, Jr., Acting General Counsel and Principal Deputy General Counsel, 810 Vermont Ave., NW, Washington, D.C. 20420.

10. The United States may be served by mail or in person on its representative in Washington, DC, the Attorney General of the United States, William Barr, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC, 20530-0001.

11. The United States may be served by mail or in person on its representative in this District, the United States Attorney for the Southern District of Texas, Ryan K. Patrick, U.S. Attorney's Office, Southern District of Texas, 1000 Louisiana, Ste. 2300, Houston, TX 77002.

**VENUE**

12. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, in that the Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391(e). Alternatively, venue is appropriate because a substantial part of the events or omissions giving rise to the claim occurred here. *See* 28 U.S.C. § 1391(b)(2).

**JURISDICTION**

13. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1346 (United States as a defendant) as Plaintiff brings this suit against a U.S. government agency.

14. This Court also has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) under Title VII, as amended, for employment discrimination on the basis of race and religion, the ADA for disability discrimination and retaliation, and the ADEA, as amended, for employment discrimination on the basis of age.

15. The unlawful employment practices were committed within the jurisdiction of this Court.

**PROCEDURAL REQUISITES**

16. All conditions precedent to the filing of this action have been met by Plaintiff in that she has filed a timely complaint with the relevant agency and has exhausted all other administrative remedies from said agency to pursue her claims. This lawsuit is being filed in this court after no action following 180 days after filing

3

her initial complaint of discrimination and after requesting a Final Agency Decision.

17. Plaintiff contacted the agency EEO Counselor on or about May 5, 2015, within forty-five (45) days of the acts of discrimination, to report race, religion, age, and disability discrimination as well as to report retaliation for requesting reasonable accommodations related to her disability.

18. On or about June 9, 2015, Plaintiff received Notice of Right to File a Formal Complaint with the Department of Veterans Affairs Office of Resolution Management in Docket No. 2003-0580-2015103255.

19. On or about June 23, 2015, Plaintiff timely mailed a Formal Complaint with the Department of Veterans Affairs Office of Resolution Management in Docket No. 2003-0580-2015103255, as required within fifteen (15) days.

20. Plaintiff's Complaint was accepted for filing effective January 22, 2016.

21. Plaintiff elected to pursue a hearing before the Equal Employment Opportunity Commission to resolve her claims.

22. Plaintiff then elected to dismiss her hearing request effective February 26, 2020 and requested a Final Agency Decision.

23. At that point in time, Plaintiff was entitled to appeal a final order from the Department of Veterans Affairs to the EEOC's Office of Federal Operations upon receipt of the Final Agency Decision or seek adjudication of her Complaint in federal district court.

24. Pursuant to 29 CFR §1614.407(b), the filing of this lawsuit has been accomplished after the lapse of one hundred and eighty (180) days of the date that

Plaintiff filed her individual complaint (Docket No. 2003-0580-2015103255) and Plaintiff has not filed an appeal nor has the Agency issued a Final Agency Decision.

**FACTS**

25. Plaintiff is a white female who at the time of her termination was 65 years old.

26. Plaintiff is allergic to toxic mold. Plaintiff develops headaches, shortness of breath, coughing and chest pain when exposed to toxic mold.

27. Plaintiff began working for the Department of Veterans Affairs at the Michael E. DeBakey VA Medical Center in Houston, Texas in September 2012 as a reemployed annuitant, i.e. a person receiving a Civil Service Retirement System or Federal Employee Retirement System retirement annuity, while also earning a paycheck as a Federal employee.

28. Plaintiff was hired as a Telecare Registered Nurse, Level 1/3, Step 22, despite having the qualifications of a Level III, IV, and V nurse.

29. Plaintiff served as a telephone triage nurse from September 23, 2012 to February 5, 2015 and was frequently tasked with answering the suicide hotline.

30. Plaintiff was reassigned to a different position, Fee Clinical Coordinator Nurse II, Non-VA Care Coordination, from February 6, 2015 until her termination on April 3, 2015.

31. Between September 23, 2012 and February 5, 2015, Plaintiff was assigned to Building 122 on the Michael E. DeBakey VA Medical Center campus.

32. Building 122, consisting of enclosed rooms numbering in the 100s to 300s, was riddled with toxic mold and the toxic mold caused Plaintiff to develop headaches,

shortness of breath, coughing and chest pains.

33. Plaintiff was a telephone triage nurse and could work from any building equipped with a telephone, as was done during the period of time, September 23, 2012 to February 5, 2015, during Plaintiff's employment as a member of the Telecare RN staff. Telecare staff and all Telecare functions were moved to the Main MEDVAMC (Michael E. DeBakey Veterans Affairs Medical Center) building whenever pesticide treatments, some treatments for toxic mold, carpets were replaced, episodes of sewage overflow and other incidents occurred in Building 122. Management determined that staff should vacate the building during these incidents. Therefore, Plaintiff requested to be moved into a different building on the Michael E. DeBakey VA Medical Center campus to address her allergy to the persistent toxic mold.

34. Other staff, including but not limited to, Marlisa Price, Audrey Thomas and Maurice Stringfellow (all African-American, non-disabled and two of the three were under age 40 employees) were relocated from Building 122 upon request in order to avoid the building's hazardous conditions.

35. Plaintiff requested this same accommodation from her superiors, Mark Muhammad, Director of Human Resources, Christopher Sandles, Telecare Director, Judy Vuong, Telecare Manager, Edtrina Moss, Telecare Nurse Manager, and Denise Johnson, Acting Telecare Nurse Manager (collectively "Management") on or about July 7, 2014. Plaintiff specifically requested to be moved to another location away from Building 122, as the toxic mold permeated the entire building.

36. In September 2014, Plaintiff requested intervention by the local chapter of the American Federation of Government Employees (AFGE). The union representative, Charles H. Stevens, stated that there was a plan in place to move all employees out of Building 122 due to the presence of toxic mold. When Plaintiff approached Telecare Management about the plan to move employees out of Building 122, it was clear that Management did not intend to move employees. Instead, Building 122 would continue to be occupied twenty-four hours daily, while mold treatment was in progress and employees continued their daily tasks. All employees present per their shift assignments were referred to the Office of Workers Compensation Programs (OWCP) if they experienced any negative effects from either the toxic mold or the chemical treatments of the mold.

37. Management failed to make accommodations for Plaintiff's disability and engage in the interactive process.

38. Throughout September 2014, Plaintiff again informed Telecare Management that the presence of toxic mold in Building 122 was making her ill, and requested again to be moved to a safer location.

39. Again, Management failed to provide the requested accommodation and engage in the interactive process.

40. Instead, Management directed Plaintiff to remain at her duty station and file an OWCP claim.

41. Marlisa Price, MSA, B/F, and Audrey Thomas, B/F, were both quickly relocated out of Building 122 without filing an OWCP claim.

42. On or about September 30, 2014, Plaintiff again informed Management that the

toxic mold was exacerbating her medical condition, requested the accommodation to be moved from Building 122 and provided a letter from Plaintiff's doctor, in which Plaintiff's doctor recommended that Plaintiff should be moved away from the source of the toxic mold.

43. On or about October 2, 2014, Plaintiff received her annual performance review. She was rated "Satisfactory" in all areas, but was not promoted to a higher nurse level and remained a Level 1 RN. Plaintiff was rated "Satisfactory" despite an acknowledgement by Denise Johnson, of Telecare, that Plaintiff typed faster and took more calls than both the charge nurses and the staff nurses who shared Plaintiff's shift. On or about October 23, 2014, Plaintiff again informed Management that the toxic mold was exacerbating her medical condition, requested the accommodation to be moved from Building 122. Management told Plaintiff to move across the hall to Room 119 within Building 122, which did nothing to alleviate Plaintiff's symptoms or allergy, as the toxic mold and other irritants and allergens were transmitted through Building 122's HVAC system.

44. On or about October 24, 2014, Plaintiff was assigned to handle the suicide hotline, which required the use of a dedicated phone line and the presence of support personnel. Plaintiff informed Management again of her ongoing issue with the toxic mold, and then both levels of Telecare Management repeated their offer for Plaintiff to move across the hall to Room 119 within Building 122. Not only did this proposal not address Plaintiff's disabling condition, but also working alone in a room as a nurse dedicated to the suicide hotline and the use of a non-dedicated phone to handle suicide hotline calls would have violated the applicable

8

Telecare Policies and Procedures. Plaintiff informed both levels of Telecare Management that that one person working alone in a room on a non-dedicated telephone line for suicide calls and one person handling a suicide calls was a violation of Telecare Policies and Procedures and nursing best practices.

45. On or about October 27, 28, and 29, 2014, Plaintiff again informed Management that the exposure to toxic mold was exacerbating Plaintiff's diagnosed health condition, and requested to be moved to a safe location based on the doctor's letter that she submitted to Telecare Management. Management again said that Plaintiff could move to a room across the hall to Room 119 within Building 122, but failed to make reasonable accommodations and engage in the interactive process.

46. Plaintiff's requests were denied and on November 23, 2014, Plaintiff asked Willie Turner, the manager of the Workers Compensation Programs (OWCP) why Plaintiff was not allowed to receive worker's compensation or other assistance. Despite providing extensive documentation from Plaintiff's physician, the OWCP rejected this documentation and determined that Plaintiff was not "incapacitated". As a result, Plaintiff utilized most of her sick leave, annual leave, leave without pay (LWOP), compensatory pay, credit hours and holiday pay to protect her health.

47. Plaintiff was the only individual out of the Telecare Personnel who was not selected for worker's compensation. Willie Turner, the OWCP Programs Manager, referred Plaintiff to Christopher Sandles, Telecare Director, and Assistant Director MEDVAMC as the decision maker. Mr. Turner then directed

the Plaintiff to the local EEO program to submit a written accommodation request.

48.	Plaintiff followed up on her request to be moved from Building 122 with Telecare Management every day that Plaintiff was scheduled to work her shift from October 2014 to January 2015, including but not limited to November 12, 2014, November 25, 2014, December 11, 2014, December 17, 2014, January 21, 2015, and January 22, 2015. During this period, when Plaintiff made daily requests regarding her proposed reasonable accommodation, Telecare Management denied the approval of an interim reasonable accommodation. Plaintiff continued to use accrued sick time, annual leave, holiday time, compensatory time or credit hours to avoid exposure to toxic mold as well as recover from the effects of toxic mold.

49.	On December 17, 2014, Plaintiff's management apparently approved her request to move to a different building as an interim accommodation. However, this information was not shared with the Plaintiff. As Plaintiff's annual leave and sick leave were almost exhausted, Plaintiff repeatedly contacted various members of Telecare Management. On January 22, 2015, Plaintiff finally reached Mark Muhammad, Director, Human Resources for a status update. Unknown to Plaintiff, on January 26, 2015, Telecare Management Requested Plaintiff be reassigned to another Registered Nurse Position.

50.	On February 2, 2015, Edtrina Moss, Program Manager of the Care Coordination Office, contacted Plaintiff regarding returning to work on February 6, 2015, in a different position, as a Registered Nurse Fee Basis – Fee Clinical Coordinator Nurse II, Non-VA Care Registered Nurse Level II. The position was located in

the Main Hospital and the Plaintiff agreed to this new position in order to work in a safe and healthy environment. The Nurse Level II position did not reflect the Plaintiff's years of experience and training.

51. On March 23, 2015, Plaintiff was issued a notice of termination of her reemployed annuitant appointment by Judy Vuong, Telecare Manager, without proper notice or due process.

52. Christopher Sandles, Telecare Director, stated that the decision to terminate the Plaintiff was based on her alleged inability to perform the essential functions of the position, despite being rated satisfactory six months prior, and her over nineteen years of telephone triage experience, thirty-four years' experience as a registered nurse.

53. Plaintiff was terminated effective April 3, 2015.

54. Plaintiff contacted the agency EEO Counselor on or about May 5, 2020, within forty-five (45) days of the acts of discrimination, to report a hostile work environment case based on race, age, religion and disparate treatment on the basis of disability and retaliation for making requests for reasonable accommodation.

## COUNT I
## DISCRIMINATION OF THE BASIS OF DISABILITY

55. Plaintiff re-alleges and incorporates Paragraphs 1-54 of this Complaint as if fully set forth herein.

56. Plaintiff suffers from a severe allergy to toxic mold.

57. Alternatively, Plaintiff was perceived as disabled due to her allergy and her requests for reasonable accommodation.

58. Plaintiff was repeatedly denied reasonable accommodation due to her disability.

11

59. Defendant, by and through its employees, failed to engage in the interactive process of providing reasonable accommodations to Plaintiff u after months of formal and informal requests until February 6, 2015. Plaintiff was the only Telecare employee treated this way; all other employees were referred to the OWCP or moved immediately based on their verbal requests.

60. Defendant, by and through its employees intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by the ADA/ADAAA.

61. Defendant, by and through its agents and employees, maintained a policy of disability discrimination and engaged in the aforementioned practices, policies, customs and usages made unlawful in violation of the foregoing statute against Plaintiff.

62. Had Plaintiff not been disabled (or perceived to be disabled) because of her allergy, and had not repeatedly, orally and in writing, requested accommodations, she would not have been subjected to a hostile work environment and terminated.

**COUNT II**
**TERMINATION ON THE BASIS OF RETALIATION UNDER ADA**

63. Plaintiff re-alleges and incorporates into count two, paragraphs 1-54 of this Complaint as if fully set forth herein.

64. Plaintiff engaged in a protected activity under the ADA/ADAAA by repeatedly requesting reasonable accommodations, such as a safe, non-hazardous workspace free from toxic mold and other allergens, even though she was fully qualified for her position and able to perform the essential functions of her job.

65. Had Plaintiff not engaged in a protected activity under the ADA/ADAAA, Defendant would not have subjected her to a hostile work environment and would not have retaliated by terminating her.

## COUNT III
## DISCRIMINATION ON THE BASIS OF AGE UNDER ADEA

66. Plaintiff re-alleges and incorporates into count three, paragraphs 1-54 of this Complaint as if fully set forth herein.

67. Defendants, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by the ADEA, as amended.

68. Defendants, by and through their agents, have maintained a policy of age discrimination, and unlawfully terminated Plaintiff in violation of the foregoing statute.

69. If Plaintiff was not over 40, she would not have been subjected to a hostile work environment and terminated.

## COUNT IV
## DISCRIMINATION ON THE BASIS OF RACE UNDER TITLE VII

70. Plaintiff re-alleges and incorporates into count four, paragraphs 1-54 of this Complaint as if fully set forth herein.

71. Defendants, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, as amended, and directly discriminated against Plaintiff because of her race.

72. Defendants, by and through their agents, have maintained a policy of race discrimination in violation of the foregoing statute against Plaintiff.

73. If Plaintiff were not white, she would not have been subjected to a hostile work environment, treated poorly, and unlawfully discharged.

## DAMAGES

74. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## ADEA LIQUIDATED DAMAGES

75. Defendants' actions were willful, and as a further and proximate cause, Plaintiff was terminated and lost wages. Plaintiff, therefore, seeks liquidated damages under the ADEA in the amount of his back pay to be determined by the trier of fact.

## ATTORNEY'S FEES

76. Defendants' actions and conduct, as described herein, and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of multiple attorneys in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## JURY DEMAND

77. Plaintiff hereby restates her request for a jury trial.

## INJUNCTIVE RELIEF

78. Plaintiff seeks injunctive relief requiring Defendants to take affirmative and

effective steps towards those who have failed to comply with the Americans With Disabilities Act of 1991, as amended.

79. Plaintiff especially seeks a mandatory injunction ordering Defendants to reinstate Plaintiff to her job with appropriate accommodations for her disability.

80. Plaintiff seeks injunctive relief requiring Defendants to take specific actions designed, implemented, and confirmed by qualified non-government consultants to ensure that all supervisory employees are adequately trained to identify, investigate, and stop situations and complaints. Such specific actions include, but are not limited to:

a. allocation of significant funding and trained staff to implement all changes within two years;

b. discipline managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints and to take effective action to stop and deter prohibited personnel practices against employees;

c. establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

d. creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's process;

e. mandatory and effective training for all employees and managers on discrimination and retaliation issues, investigations, and appropriate corrective actions, designate resource persons and ombudsmen for employees at Michael E. DeBakey Medical Center and the Department of Veterans Affairs national headquarters;

f.  eliminating the backlog of current EEO cases alleging discrimination, harassment and reprisal; and reinstating Plaintiff to her position and making Plaintiff whole.

**PRAYER**

81.  WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

a.  Back Pay;

b.  Pre-Judgment Interest on Back Pay;

c.  Front Pay;

d.  Compensatory Damages, including, but not limited to, emotional distress;

e.  Liquidated Damages;

f.  Injunctive and Affirmative Relief;

g.  Attorney's Fees and Costs;

h.  Reinstatement accommodating Plaintiff's disability; and

i.  Such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

Dated: December 17, 2020    Respectfully submitted

COANE AND ASSOCIATES, PLLC

By: */s/Bruce A. Coane*
Bruce A. Coane, Attorney-in-Charge
S.D. Tex. # 7205
TX Bar # 04423600
Email: bruce.coane@gmail.com
Matthew P. Swiger
S.D. Tex. #2276929

16

TX Bar # 24088495
Email: matt.swiger@coane.com
Coane and Associates, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: 713-850-0066
Facsimile: 713-850-8528
**ATTORNEYS FOR PLAINTIFF**